FILED IN OPEN COURT
ON 8/20/2025 ACC
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

DGB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25CR-204-FL-RN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | INDICTMENT |
| v. ) | |
| ) | |
| CALVIN DAMINICE STEWART ) | |
| QUAVEDRIAN DA'MON GIBSON AKA "QUA" ) | |
| KEYONDRE DEIONTA PURVIS ) | |
| MICHAEL RAEKWON RYNER AKA "RAYDAWG" | |

The Grand Jury charges the following:

### INTRODUCTORY ALLEGATIONS

1. From in or about April 2022 to in or about September 2022, Defendants CALVIN DAMINICE STEWART (STEWART), QUAVEDRIAN DA'MON GIBSON, also known as "QUA" (GIBSON), KEYONDRE DEIONTA PURVIS (PURVIS), and MICHAEL RAEKWON RYNER, also known as "RAYDAWG" (RYNER), and others, known and unknown to the Grand Jury, conspired to defraud—and did defraud—State Employees' Credit Union, a member-owned credit union headquartered in Raleigh, North Carolina.

### I. STATE EMPLOYEES' CREDIT UNION (SECU)

2. State Employees' Credit Union (SECU) was a state-chartered credit

1

union founded in 1937 and headquartered in Raleigh, North Carolina.

3. Membership in SECU was primarily limited to employees of the State of North Carolina and their immediate family, or the immediate family of current SECU members.

4. SECU was a "financial institution" as that term is defined in Title 18, United States Code, Section 20, because it was a credit union whose accounts were insured by the National Credit Union Share Insurance Fund.

## II. THE BANK FRAUD SCHEME

5. Beginning at least as early as in or about April 2022, through in or about September 2022, the Defendants, STEWART, GIBSON, PURVIS, and RYNER conspired with each other, and others, known and unknown to the grand jury, to engage in fraud upon SECU.

6. By no later than in or about April 2022, SECU's banking software had a security vulnerability. For a limited period every night, usually around 2:00 AM, SECU's computer systems reconciled all of the daily member activity, including cash and check deposits and withdrawals, whether through Automated Teller Machines (ATMs), CashApp transactions, or in person transactions.

7. During the down time of the reconciliation process, SECU's computer systems could not determine the true balance in its members' accounts until after the reconciliation process completed. During the reconciliation period, SECU assumed that the balance of any particular account equaled at least the total

2

volume of daily activity in that account. By way of illustration, if a particular member account's daily activity consisted of a $1,000 check deposit and a $500 cash withdrawal, SECU credited the account as having at least $1500 during that day's reconciliation. Thus, up to $1500 could be withdrawn from that account during the reconciliation period irrespective of the true balance.

8. To exploit this security vulnerability, the Defendants engaged in sham transactions, repeatedly depositing and withdrawing funds from member accounts to artificially inflate the accounts' assumed balances during the reconciliation period. The Defendants were then able to withdraw large amounts of cash in excess of the true account balances. After the Defendants completed the sham activity and then completed the inflated withdrawals during the reconciliation period, the accounts were left with negative balances that were not repaid, thus defrauding SECU.

9. In order to maximize the fraudulent proceeds that they could obtain via this scheme, the Defendants and others solicited friends, family-members, acquaintances, and members of the public who had SECU accounts, through social media or direct contact. Most SECU members accessed their accounts through an online password-protected platform (such as a mobile application or website) or through ATM and purchase transactions with their bank cards and personal identification numbers (PIN). Thus, the SECU members who agreed to allow the Defendants to use their accounts gave the Defendants or other members of the

conspiracy their physical cards and PIN and/or their online credentials to access their SECU accounts.

10. Sometimes, the SECU members engaged in some of the sham transactions on their own or together with the Defendants and other members of the conspiracy. In other instances, the SECU members allowed the Defendants access to their accounts without any further direct participation in the scheme. The Defendants generally promised the SECU members some share of the fraudulent proceeds in exchange for granting the Defendants access to their accounts.

11. The Defendants and their coconspirators collectively defrauded SECU out of hundreds of thousands of dollars.

## COUNT ONE

12. Introductory paragraphs 1 through 11 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

13. From at least as early as in or about April 2022 through in or about September 2022, in the Eastern District of North Carolina and elsewhere, Defendants STEWART, GIBSON, PURVIS, and RYNER did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other, and others known and unknown to the Grand Jury, to commit offenses against the United States, specifically: Bank Fraud, that is to execute and attempt to execute a scheme and artifice to defraud a financial institution within the meaning of Title 18, United States Code, Section 20—State Employees' Credit Union (SECU)— and to obtain any of the moneys, funds, credits, assets, and securities owned by, and

4

under the custody and control of, SECU, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## Purpose of the Conspiracy

14. The purpose of the conspiracy was for Defendants STEWART, GIBSON, PURVIS, and RYNER, and others, known and unknown to the Grand Jury, to fraudulently obtain United States currency from SECU, to which they were not entitled, through excess and sham deposits into—and withdrawals from—the accounts of SECU members.

## Manner and Means of the Conspiracy

15. Defendants STEWART, GIBSON, PURVIS, and RYNER, and others, known and unknown to the Grand Jury, carried out the objectives of the conspiracy in the manner and means as set forth in paragraphs 5 through 11 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWOS THROUGH TWELVE

16. Introductory paragraphs 1 through 11 are realleged and incorporated into these Counts as factual allegations by reference as if fully set forth herein.

## The Scheme to Defraud

17. From in or about April 2022 through in or about September 2022, within the Eastern District of North Carolina and elsewhere, the Defendants,

STEWART, GIBSON, PURVIS, and RYNER, aiding and abetting each other and others, knowingly devised and intended to device a scheme and artifice to defraud SECU, a financial institution within the meaning of Title 18, United States Code, Section 20; and to obtain any of the moneys, funds, credits, assets, and securities owned by, and under the custody and control of, SECU, by means of false and fraudulent pretenses, representations, and promises.

## Manner and Means

18. The Defendants, STEWART, GIBSON, PURVIS, and RYNER, aiding and abetting each other and others, carried out the scheme and artifice to defraud in the manner and means set forth in paragraphs 5 through 11.

## Bank Fraud

19. For the purpose of executing the aforementioned scheme to defraud SECU and to obtain the moneys, funds, credits, assets, and securities owned by, and under the custody and control of, SECU, by means of false and fraudulent pretenses, representations, and promises, the following Defendants, aiding and abetting each other and others, between in or about April 2022 and in or about September 2022, engaged in sham deposits and withdrawals with respect to the following SECU accounts:

6

| Count | Defendant(s) | Last Four of SECU Account Number |
|---|---|---|
| 2 | QUAVEDRIAN DA'MON GIBSON AKA "QUA" <br> MICHAEL RAEKWON RYNER AKA "RAYDAWG" | -8619 |
| 3 | CALVIN DAMINICE STEWART <br> QUAVEDRIAN DA'MON GIBSON AKA "QUA" | -2427 |
| 4 | CALVIN DAMINICE STEWART <br> QUAVEDRIAN DA'MON GIBSON AKA "QUA" | -9216 |
| 5 | CALVIN DAMINICE STEWART <br> QUAVEDRIAN DA'MON GIBSON AKA "QUA" | -9084 |
| 6 | CALVIN DAMINICE STEWART <br> QUAVEDRIAN DA'MON GIBSON AKA "QUA" <br> KEYONDRE DEIONTA PURVIS | -1600 |
| 7 | CALVIN DAMINICE STEWART <br> QUAVEDRIAN DA'MON GIBSON AKA "QUA" <br> KEYONDRE DEIONTA PURVIS | -8412 |
| 8 | CALVIN DAMINICE STEWART <br> MICHAEL RAEKWON RYNER AKA "RAYDAWG" | -6920 |
| 9 | CALVIN DAMINICE STEWART | -9503 |
| 10 | MICHAEL RAEKWON RYNER AKA "RAYDAWG" | -4552 |
| 11 | MICHAEL RAEKWON RYNER AKA "RAYDAWG" | -6685 |
| 12 | KEYONDRE DEIONTA PURVIS | -2602 |

Each row of the forgoing table constituting a separate violation of Title 18, United States Code, Sections 1344 and 2.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any violation of, or conspiracy to violate, Section(s) 215, 656, 657, 1006, 1007, 1014, 1341, 1343, or 1344 of Title 18 of the United States Code affecting a financial institution, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against QUAVEDRIAN DA'MON "QUA" GIBSON, in the amount of at least $137,025.09;

8

b) A sum of money representing the gross proceeds of the offense(s) charged herein against KEYONDRE DEIONTA PURVIS, in the amount of at least $48,311.18;

c) A sum of money representing the gross proceeds of the offense(s) charged herein against MICHAEL RAEKWON RYNER, in the amount of at least $79,138.00; and

d) A sum of money representing the gross proceeds of the offense(s) charged herein against CALVIN DAMINICE STEWART, in the amount of at least $209,375.68.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL:

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

Date: 8/20/25

W. ELLIS BOYLE
United States Attorney

DAVID G. BERAKA
Assistant United States Attorney

10